MAX FINEGOLD, administrator, etc., et al., complainants,

*v.*

BESSIE H. VREDENBURGH et al., defendants.

[Decided August 17th, 1925.]

**Wills—Widow of Testator Elected Under the Will to Take Entire Income From Certain Property—Complainants, Having Contingent Interest Only, Allege That Income Was Not Taken For Her Use, But For That of Her Children Against Complainants' Interest—Master's Report Disclosed Irregularities of Defendants, But No Proof That Complainant Has Established Its Case—Affirmative Proof of Use of Funds Necessary—Decree Without Costs For Defendant.**

On supplemental hearing and motion to confirm master's report.

*Mr. William Hartshorne* and *Mr. Holmes V. M. Dennis, Jr.,* for the complainants.

*Messrs. Stokes & McDermott* and *Mr. Merrill Lane,* for the defendants.

BUCHANAN, V. C.

The facts in the case are for the most part fully set forth in the prior conclusions filed herein. It was determined that the testator's widow had a legal life estate in the Freehold property, and a life estate in so much of the rents and profits of the New York City real estate as she might choose and elect to take for her own support and use—the children having the remainder interest; that the widow had, in fact, chosen and elected to take the whole of the income from the New York City property.

The only question left open was as to the allegation of complainants (the widow and child of one of testator's children) that such choice and election of testator's widow to take the entire New York City income, was as to part thereof not for her own support and use, but for the purpose of turning it over to testator's other three children in fraud of complainants.

Upon this issue a reference was made to a master to take the detail proofs as to all of the dealings and transactions of the defendant widow and children in relation to these New York rents—to ascertain what these rents were and what disposition had been made of them by defendants, or any of them. The evidence taken on this reference has been returned by the master, with an accompanying summarizing report. Exceptions to the report were filed by defendants—complainants argue for its confirmtaion and for a decree for a money payment to them from defendants.

Concededly, there are some clerical errors in the report which should be corrected, but they are not material in the determination of the cause. The reference to the master was not for an account, but rather for discovery—for the production of evidence solely within the knowledge and control of defendants. Complainants have not sought to compel further discovery, but ask for entry of final decree.

The matters involved in the evidence were submitted in two sections, so to speak—the first covering May, 1920, to October, 1923, and the second, the continuation down to October, 1924. Inasmuch as considerable complexity and confusion arises from this fact—the two briefs and the master's report not using the same figures throughout or viewing them from the same standpoint—it will be simpler and sufficient for present purposes to deal with the figures for the first period. Consideration of the figures as to the second period shows that no different conclusions can be drawn therefrom.

It appears from the evidence that the rental of the New York City real estate was in the hands of the agent employed by testator in his lifetime (this pursuant to suggestion in

testator's will), that the agent collected the rents, paid insurance, water rents, repairs, &c., and remitted the balance, monthly, not to testator's widow, but to the executors. The executors did not keep these rents in a separate fund, but mingled them with the other funds which they properly had as executors, and out of the mingled funds they paid disbursements properly chargeable against decedent's estate, and also payments properly chargeable against the testator's widow.

Down to October, 1920, the executors received in this wise a total of $50,917.58. They submitted a statement or schedule of disbursements (*Ex. D-38*) testifying that it was an accurate statement of disbursements made by them out of these rent moneys, during the same period. This cannot be true, in fact, for the items total $51,626.05.

Of these items of disbursement a total of $13,095 is for taxes and mortgage interest on the New York City property, and a further total of $32,000 for payments of $800 per month testified to have been made directly to testator's widow. That this aggregate of $45,095 would properly be payable out of the New York City rents is obvious and conceded. Defendants say that the balance—$5,822.58—of the New York City rents was expended by payments as follows:

Taxes, water rents, insurance and repairs, Freehold
 property ................................. $1,690.25
Taxes, water rents, insurance and repairs, Spring
 Lake property .......................... 761.04
Charities (acc. of testator's widow) ............ 749.75
Taxes and assessments, Elmhurst property....... 970.12
Legal expenses ............................. 1,900.02
Other expenses ............................. 618.59
 ————
 Total ................................. $6,689.77

Complainants contend that these items are not proper "executor's expenses." Of course they are not (with the ex-

ception possibly of a few individual items under "Legal Expenses" and "Other Expenses"), but that is entirely beside the issue. This is not an executor's accounting, as such. The question is what the defendants have done with the New York City rents (with which, as executors, they were in nowise concerned, but which they did, in fact, receive and disburse), and whether the explanation of how these rents were disbursed is true.

If the net New York City rents went to testator's widow, they went where they should have gone under her election to take the whole of them; and if she used them for her own support and use, her election to take the whole cannot be deemed to have been in fraud of complainants. .

The payments under the head of Spring Lake property, Freehold property and charities are equivalent to payments made to testator's widow, for they are for her benefit and account—she being the owner of the Spring Lake property and the legal life tenant of the Freehold property.

The payments of taxes and assessments on the Elmhurst property cannot, however, in anywise be deemed a payment to or for the account of testator's widow (since she had no interest whatever in the Elmhurst property). The same thing is true as to most, if not all, of the items under "Legal Expenses," and as to a considerable portion of the items "Other Expenses." It is not necessary to ascertain the exact figures—let us assume that *all* of the items under the last two heads are items not for the benefit or account of testator's widow.

The resultant situation is that defendants have shown (on the evidence thus far considered) that out of the $50,917.58 New York City rents received by them, $13,095 was paid for the upkeep of the New York property, and $35,201.04 ($32,000 plus $3,210.04) was paid to or for the account and benefit of testator's widow, and that the balance of $1,811.54, which should have been paid to testator's widow, was (without her authority, so far as appears) paid out to other persons for purposes not chargeable to her.

It further appears in the evidence, however, as to items aggregating $2,000.98, which defendants have herein testified were paid by them out of the New York City rents, they swore in proceedings in the orphans court that they had paid these identical items out of the estate funds, instead of the New York City rents. And it further appears later in the evidence that they testify that payments of items aggregating $2,183.12 were made by testator's widow, out of the $32,000 received by her as hereinbefore mentioned, in direct conflict with their earlier testimony herein that the same items had been paid by themselves directly; and still later it appears that a payment of $383 herein testified to have been made by the widow out of the $32,000, was made by defendants out of entirely different funds.

It is evident that the testimony of defendants, so discredited by these flagrant contradictions, cannot be relied upon. The result is a lack of satisfactory evidence as to what actually was done with a large portion of these New York City rents. The same considerations render unsatisfactory the testimony as to what was done by testator's widow with at least a portion of the $32.000 said to have been paid directly to her.

So far as complainants are concerned, however, the difficulty is that there is no other evidence—no affirmative evidence—that payment of any sums worth consideration were made out of the New York City rents to testator's three living children for their own benefit, either by testator's widow or by the children themselves, with her knowledge or consent. The burden of proof is upon complainants to establish that charge affirmatively. The unreliability or utter failure of all evidence to negative such a charge cannot supply the want of any affirmative evidence.

It is not enough that it may justly be said, in view of the evidence, that it *may* be true that considerable portions of the New York rents were paid to or received by the three children for their own use with their mother's participation, active or passive. Other inferences are at least equally justifiable, to wit—(1) that *all* the New York City rents were

paid to the mother or for her account and benefit; (2) that some of the rents were paid out wrongfully by the three children to themselves or to third persons, without the mother's knowledge or consent; (3) that the three children either knowingly or inadvertently still have in their hands, without the mother's knowledge or consent, a portion of the New York City rents. In none of these contingencies would complainants have any ground for relief, although under all but the first the mother might well have ground for relief against the three children.

Neither does the evidence show any accumulation by the widow of the New York City rents, such as would show bad faith in her election.

Complainants have failed to prove that the widow's election to take the whole of the New York City rents for her own support and use was not *bona fide;* have failed to show that they have any present interest in the New York City property or rents (other than a vested remainder subject to the existent life estate of the widow), or any right to present relief.

·Mention is made by complainants of evidence tending to· show a sale by the executors (under testamentary power of sale) of the Elmhurst property in which complainants have a present interest, and failure to distribute the proceeds. That, however, is not within the issues of the present bill.

In view of all the circumstances, including the intermingling and confusion of the rents with the estate funds, and the recklessness of the testimony adduced on behalf of defendants, costs will not be allowed defendants. Complainants do not charge, nor do I believe that there was intentional false swearing, but it is obvious that careless swearing to matters in fact untrue is liable to be productive of miscarriage of justice equally as much as perjury, and is almost as much to be reprehended.